UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMPLAINT

09 Civ 1042

WALDEN FEDERAL SAVINGS AND LOAN
ASSOCIATION,

*Plaintiff,*

- against -

THE SLANE COMPANY, LTD., CHARLES SLANE,
and DANIEL SLANE,

*Defendants.*

Assigned Judge:

Hon. Stephen C. Robinson
(SCR)

The Plaintiff, Walden Federal Savings and Loan Association, by its attorneys, Jacobowitz &

Gubits, LLP., as and for its complaint against the Defendants, respectfully alleges:

### PARTIES

1.      That at all times hereinafter mentioned, the Plaintiff, Walden Federal Savings and Loan

Association (hereinafter referred to as "Walden Federal"), was and still is a savings and loan

association, organized and existing under the laws of the United States of America with a principal

place of business at 12 Main Street, Walden, Orange County, New York.

2.      Upon information and belief, that at all times hereinafter mentioned, the Defendant, The

Slane Company, Ltd., (hereinafter referred to as "The Slane Company"), is a foreign corporation with

corporate offices located at 261 West Johnstown Road, Colombus, Ohio 43230-2732, and is made a

party defendant herein for the reason that said defendant executed a Guaranty of Payment of debt owed

by Oxford Landing, LLC., (hereinafter referred to as "Oxford Landing") to the Plaintiff.

3.      Upon information and belief, that at all times hereinafter mentioned, the Defendant

Charles Slane, is an individual residing at 9780 Winhale Farm Circle, Galena, Ohio 43021, and is made

a party defendant herein for the reason that said defendant executed a Guaranty of Payment of debt

owed by Oxford Landing to the Plaintiff.

4.      Upon information and belief, and that at all times hereinafter mentioned, the Defendant

Daniel Slane is an individual residing at 7648 Silver Lake Court, Westerville, Ohio 43082 and is made

a party Defendant herein for the reason that said Defendant executed a Guaranty of Payment of debt owed by Oxford Landing to the Plaintiff.

### JURISDICTION AND VENUE

5.     The Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a)(1) because the matter in controversy exceeds the sum or value of Seventy Five Thousand and 00/100 ($75,000.00) Dollars and is between citizens of different states.

6.     Venue is appropriate pursuant to 28 U.S.C §1391 in the Southern District of New York based upon the fact that a substantial part of events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated in the Southern District of New York.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST
### THE SLANE COMPANY, CHARLES SLANE and DANIEL SLANE

7.     On July 26, 2005, Oxford Landing borrowed One Million One Hundred Eighty Five Thousand and 00/100 ($1,185,000.00) Dollars with interest at the rate of Eight (8.0%) per cent per annum, from the Plaintiff, Walden Federal Savings and Loan Association.

8.     On November 1, 2007 Oxford Landing executed, acknowledged and delivered to Plaintiff, an Amended and Restated Promissory Note in the amount One Million One Hundred Eighty Four Thousand Four Hundred Ninety Five 48/100 ($1,184,495.48) Dollars, with an interest at the rate of Eight (8.0%) percent per annum, which Note amends and restates an Adjustable Rate Note in the amount of One Million One Hundred Eighty Five Thousand 00/100 ($1,185,000.00) Dollars dated July 26, 2005. A copy of the November 1, 2007, Amended and Restated Promissory Note is annexed hereto as **Exhibit "A."**

9.     On June 1, 2008, the Oxford Landing, executed, acknowledged and delivered to Plaintiff, an Amended and Restated Promissory Note in the amount One Million One Hundred Eighty Four Thousand Four Hundred Ninety Five and 48/100 ($1,184,495.48) Dollars, with an interest at the rate of Seven (7.0%) percent per annum, which Note amends and restates an Adjustable Rate Note in the amount of One Million One Hundred Eighty Five Thousand and 00/100 ($1,185,000.00) Dollars,

dated July 26, 2005. A copy of the June 1, 2008 Amended and Restated Promissory Note is annexed hereto as **Exhibit "B."**

10.    That said Adjustable Rate Note, in paragraph 1, bears the "irrevocable, unconditional, joint and several guaranty of payment" by Defendants Charles Slane, Daniel Slane and The Slane Company. A copy of said Adjustable Rate Note is annexed hereto as **Exhibit "C,"** and a copy of the Guaranty is annexed hereto as **Exhibit "D."**

11.    That Oxford Landing, has failed to comply with the terms and provisions of said Adjustable Rate Note, by failing to pay the following:

A.    The monthly interest payment which became due on the 1st day of August, 2008, and by continuing to fail to pay the monthly interest payment which became due on the 1st day of each and every month thereafter;

B.    Late charges of Six (6.0%) percent for the above installments that are overdue to date hereof;

C.    Unpaid Village, water and sewer charges;

D.    Past due escrow payments per mortgage terms; and

E.    By omitting and failing to pay the whole of the principal sum, interest and late charges when duly demand.

12.    That the Plaintiff has elected and hereby does elect that the entire amount due on said Adjustable Rate Note shall become immediately due and payable.

13.    That there is now justly due and payable to the Plaintiff upon said Adjustable Rate Note the principal sum of One Million One Hundred Eighty Four Thousand and 48/100 ($1,184,495.48) Dollars, with interest thereon at Seven (7.0%) percent per annum from August 1, 2008 and each month thereafter.

14.    That in order to protect its security the Plaintiff may be compelled to pay taxes, sewer rents, assessment, insurance premiums and other charges and incur attorney's fees and costs affecting the mortgaged premises and Plaintiff requests that any sum so paid by Plaintiff, if any, made or paid after the date of its complaint and until the date of the sale of said premises shall be added to the sum

otherwise due and that the same may be deemed secured by the said mortgage and be adjudged as a valid lien on the premises.

15.    That no other proceedings have been had at law or otherwise and that no other action has been brought to the knowledge and belief of the plaintiff for the recovery of said mortgage debt or any part thereof.

16.    That the Plaintiff agreed to and did accept and rely upon such written guaranty of defendants as an assurance to induce Plaintiff to extend credit to the said Oxford Landing.

17.    That after demand, said Defendants Charles Slane, Daniel Slane and The Slane Company failed and refused to pay the sums due and owing to the Plaintiff as stated above.

18.    That the said personal guaranty of the said Defendants Charles Slane, Daniel Slane and The Slane Company, includes reasonable costs and expenses, including reasonable attorney's fees.

19.    That pursuant to the terms of said Guaranty, Defendants Charles Slane, Daniel Slane and The Slane Company, owe to Plaintiff the total sum of One Million One Hundred Eighty Four Thousand and 48/100 ($1,184,495.48) Dollars plus interest in the amount of Forty One Thousand Seven Hundred Ninety Eight and 10/100 ($41,798.10) Dollars and late charges in the amount of Three Thousand Four Hundred Fifty Eight and 05/100 ($3,458.05) Dollars for a total due of One Million Two Hundred Twenty Nine Thousand Seven Hundred Fifty One and 63/100 ($1,229,751.63) Dollars, plus reasonable attorney's fees pursuant to the terms of the Guaranty with costs and disbursements of this action, no part of which has been paid.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST
### THE SLANE COMPANY, CHARLES SLANE and DANIEL SLANE

20.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "19" with the same force and effect as though set forth in full at this point.

21.    On November 9, 2005, the Oxford Landing borrowed One Million and 00/100 ($1,000,000.00) Dollars, with interest at the rate of Eight (8.0%) percent per annum, from the Plaintiff, Walden Federal.

22.    On June 1, 2008, the Oxford Landing executed, acknowledged and delivered to Plaintiff an Amended and Restated Promissory Note in the amount of One Million and 00/100 ($1,000,000.00) Dollars, with interest at the rate of Seven (7.0%) per cent per annum, which Note amends and restates a Note in the amount of One Million and 00/100 ($1,000,000.00) Dollars, dated November 9, 2005. A copy of the June 1, 2008 Amended and Restated Promissory Note is annexed hereto as **Exhibit "E."**

23.    On November 1, 2007 the Defendants Oxford Landing executed, acknowledged and delivered to Plaintiff an Amended and Restated Promissory Note in the amount of One Million and 00/100 ($1,000,000.00) Dollars, with interest at the rate of Eight (8.0%) percent per annum, which Note amends and restates a Note in the amount of One Million and 00/100 ($1,000,000.00) Dollars, dated November 9, 2005. A copy of the November 1, 2007 Amended and Restated Promissory Note is annexed hereto as **Exhibit "F."**

24.    That as security for the payment of the aforesaid debt, The Slane Company, Charles Slane and Daniel Slane executed, acknowledged and delivered to the Plaintiff, Walden, a guaranty of payment, which is annexed hereto as **Exhibit "G."**

25.    That as security for the payment of the aforesaid debt, the Oxford Landing, on November 9, 2005, duly executed, acknowledged and delivered to the Plaintiff, Walden Federal, an Adjustable Rate Note.

26.    Said Note, in paragraph 1, bears the "irrevocable, unconditional, joint and several guaranty of payment" by Defendants Charles Slane, Daniel Slane and The Slane Company. A copy of said Note is annexed hereto as **Exhibit "H."**

27.    That Oxford Landing., has failed to comply with the terms and provisions of said mortgage notes by failing to pay the following:

A.    The monthly interest payment, which became due on the 1st day of August, 2008, and by continuing to fail to pay the monthly principal and interest payments which became due on the 1st day of each and every month thereafter;

B.    Late charges of Six (6.0%) percent for the above installments that are overdue to date hereof.;

C.     Unpaid Village, water and sewer charges;

D.     By omitting and failing to pay the whole of the principal sum, interest and late charges when duly demand.

28.     That the Plaintiff has elected and hereby does elect that the entire amount due on said notes and mortgage shall become immediately due and payable.

29.     That there is now justly due and payable to the Plaintiff upon said mortgage note and mortgage the principal sum of Nine Hundred Eighty Eight Thousand Six Hundred Thirty Two and 07/100 ($988,632.07) Dollars, with interest thereon at the rate of Seven (7.0%) percent per annum from August 1, 2008 and each month thereafter.

30.     That in order to protect its security the Plaintiff may be compelled to pay taxes, sewer rents, assessment, insurance premiums and other charges and incur attorney's fees and costs affecting the mortgaged premises and Plaintiff requests that any sum so paid by Plaintiff, if any, made or paid after the date of its complaint and until the date of the sale of said premises shall be added to the sum otherwise due and that the same may be deemed secured by the said mortgage and be adjudged as a valid lien on the premises.

31.     That no other proceedings have been had at law or otherwise and that no other action has been brought to the knowledge and belief of the plaintiff for the recovery of said mortgage debt or any part thereof.

32.     That the Plaintiff agreed to and did accept and rely upon such written guarantee as an assurance to induce Plaintiff to extend credit to the said Oxford Landing.

33.     That after demand, said Defendants Charles Slane, Daniel Slane and The Slane Company have failed and refused to pay the sums due and owing to the Plaintiff as stated above.

34.     That the said personal guarantee of the said Defendants Charles Slane, Daniel Slane and The Slane Company, includes reasonable costs and expenses, including reasonable attorney's fees.

35.     That pursuant to the terms of said agreement, Defendants Charles Slane, Daniel Slane and The Slane Company owe to Plaintiff the total sum of Nine Hundred Eighty Eight Thousand Six Hundred Thirty Two and 07 ($988,632.07) Dollars plus interest in the amount of Thirty Four Thousand

T:\DOCS\7610\674\18C7116.WPD-TAM                    -6-

Nine Hundred Seventeen and 53/100 ($34,917.53) Dollars and late charges in the amount of Two Thousand Seven Hundred Thirty Four and 48/100 ($2,734.48) Dollars for a total due of One Million Twenty Six Thousand Two Hundred Eighty Four and 08/100 ($1,026,284.08) Dollars plus reasonable attorney's fees pursuant to the terms of the Guaranty with costs and disbursements of this action, no part of which has been paid.

## AS FOR A THIRD CAUSE OF ACTION AGAINST
## THE SLANE COMPANY, CHARLES SLANE and DANIEL SLANE

36.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "35" with the same force and effect as though set forth in full at this point.

37.    On November 9, 2005, the Oxford Landing borrowed Eight Hundred Fifteen Thousand and 00/100 ($815,000.00) Dollars, with interest at the rate of Seven Point Seven Five (7.75%) percent per annum, from the Plaintiff, Walden Federal.

38.    That as security for the payment of the aforesaid debt, the Oxford Landing on November 9, 2005, duly executed, acknowledged and delivered to the Plaintiff, Walden Federal Savings and Loan Association, an Adjustable Rate Note.

39.    Said Note, in paragraph 1, bears the "irrevocable, unconditional, joint and several guaranty of payment" by Defendants Charles Slane, Daniel Slane and The Slane Company. A copy of said Note is annexed hereto as **Exhibit "I."**

40.    On November 1, 2007, Oxford Landing executed, acknowledged and delivered to Plaintiff an Amended and Restated Promissory Note in the amount of Eight Hundred Fifteen Thousand and 00/100 ($815,000.00) Dollars, with interest at the rate of Eight (8.0%) per annum, which Note amends and restates a Note in the amount of Eight Hundred Fifteen Thousand and 00/100 ($815,000.00) Dollars dated November 9, 2005. A copy of the November 1, 2007 Amended and Restated Promissory Note is annexed hereto as **Exhibit "J".**

41.    On June 1, 2008, Oxford Landing executed, acknowledged and delivered to Plaintiff an Amended and Restated Promissory Note in the amount of Eight Hundred Fifteen Thousand and

00/100 ($815,000.00) Dollars, with interest at the rate of Seven (7.0%) per annum, which Note amends and restates a Note in the amount of Eight Hundred Fifteen Thousand and 00/100 ($815,000.00) Dollars, dated November 9, 2005. A copy of the June 1, 2008 Amended and Restated Promissory Note is annexed hereto as **Exhibit "K"**.

42.     That Defendants, Charles Slane, Daniel Slane and The Slane Company executed a Guaranty of Payment, whereby the said Defendants covenanted and agreed to guarantee personally any balance due on the mortgage of Oxford Laniding. A copy of the Guaranty of Payment is attached as **Exhibit "L"**.

43.     That Oxford Landing has failed to comply with the terms and provisions of said mortgage notes by failing to pay the following:

A.     The monthly interest payment, which became due on the 1st day of August, 2008, and by continuing to fail to pay the monthly principal and interest payments which became due on the 1st day of each and every month thereafter;

B.     Late charges of Six (6.0%) percent for the above installments that are overdue to date hereof;

C.     Unpaid Village, water and sewer charges;

D.     By omitting and failing to pay the whole of the principal sum, interest and late charges when duly demand.

44.     That the Plaintiff has elected and hereby does elect that the entire amount due on said notes and mortgage shall become immediately due and payable.

45.     That there is now justly due and payable to the Plaintiff upon said mortgage note and mortgage the principal sum of Two Hundred Thirty Three Thousand and 28/100 ($233,975.28) Dollars, with interest thereon at the rate of Seven (7.0%) percent per annum from August 1, 2008 and each month thereafter.

46.     That in order to protect its security the Plaintiff may be compelled to pay taxes, sewer rents, assessment, insurance premiums and other charges and incur attorney's fees and costs affecting the mortgaged premises and Plaintiff requests that any sum so paid by Plaintiff, if any, made or paid

after the date of its complaint and until the date of the sale of said premises shall be added to the sum otherwise due and that the same may be deemed secured by the said mortgage and be adjudged as a valid lien on the premises.

47.     That no other proceedings have been had at law or otherwise and that no other action has been brought to the knowledge and belief of the plaintiff for the recovery of said mortgage debt or any part thereof.

48.     That the Plaintiff agreed to and did accept and rely upon such written guarantee as an assurance to induce Plaintiff to extend credit to the said Oxford Landing.

49.     That after demand, said Defendants Charles Slane, Daniel Slane and The Slane Company have failed and refused to pay the sums due and owing to the Plaintiff as stated above.

50.     That the said personal guarantee of the said Defendants Charles Slane, Daniel Slane and The Slane Company, includes reasonable costs and expenses, including reasonable attorney's fees.

51.     That pursuant to the terms of said agreement, Defendants Charles Slane, Daniel Slane and The Slane Company, owe to Plaintiff the total sum of Two Hundred Thirty Three Thousand Nine Hundred Seventy Five and 28/100 ($233,975.28) Dollars, plus interest in the amount of Seven Thousand Four Hundred Ninety Eight and 68/100 ($7,498.68) Dollars and late charges in the amount of One Thousand Two Hundred Fifty Eight and 09/100 ($1,258.09) Dollars for a total due of Two Hundred Forty Two Thousand Seven Hundred Thirty Two and 05/100 ($242,732.05) Dollars, plus reasonable attorney's fees pursuant to the terms of the Agreement with costs and disbursements of this action, no part of which has been paid.

*WHEREFORE*, the plaintiff demands judgment as follows:

A.     On the First Cause of Action against defendants Charles Slane, Daniel Slane and The Slane Company, the total sum of One Million One Hundred Eighty Four Thousand Four Hundred Ninety Five and 48/100 ($1,184,495.48) Dollars, plus interest in the amount of Forty One Thousand Seven Hundred Ninety Eight and 10/100 ($41,798.10) Dollars and late charges in the amount of Three Thousand Four Hundred Fifty Eight and 05/100 ($3,458.05) Dollars, for a total due of One Million Two Hundred Twenty Nine Thousand Seven Hundred Fifty One and 63/100 ($1,229,751.63) Dollars,

plus reasonable attorney's fees with interest from August 1, 2008, with costs and disbursements of this action, no part of which has been paid;

B.    On the Second Cause of Action against the defendants The Slane Company, Charles Slane and Daniel Slane, the total sum of Nine Hundred Eighty Eight Thousand Six Hundred Thirty Two and 07/100 ($988,632.07) Dollars, plus interest in the amount of Thirty Four Thousand Nine Hundred Seventeen and 53/100 ($34,917.53) Dollars and late charges in the amount of Two Thousand Seven Hundred Thirty Four and 48/100 ($2,734.48) Dollars for a total due of One Million Twenty Six Thousand Two Hundred Eighty Four and 08/100 ($1,026,284.08), plus reasonable attorney's fees with interest from August 1, 2008, with costs and disbursements of this action, no part of which has been paid;

C.    On the Third Cause of Action against the defendants The Slane Company, Charles Slane and Daniel Slane, the total sum of Two Hundred Thirty Three Thousand Nine Hundred Seventy Five and 28/00 ($233,975.28) Dollars, plus interest in the amount of Seven Thousand Four Hundred Ninety Eight and 68/100 ($7,498.68) Dollars and late charges in the amount of One Thousand Two Hundred Fifty Eight and 09/00 ($1,258.09) Dollars for a total due of Two Hundred Forty Two Thousand Seven Hundred Thirty Two and 05/100 ($242,732.05) Dollars, plus reasonable attorney's fees with interest from August 1, 2008, with costs and disbursements of this action, no part of which has been paid; and

D.    That the Plaintiff may have such other and further relief, or both, in the premises as shall be just and equitable.

Dated: Walden, New York
        February 4, 2009

                                JACOBOWITZ AND GUBITS, LLP.

                        BY: _____
                                Mark T. Starkman, Esq. (MS0866)
                                *Attorneys for Plaintiff*
                                158 Orange Avenue, P.O. Box 367
                                Walden, New York 12586-0367
                                Telephone: (845) 778-2121

# AMENDED AND RESTATED PROMISSORY NOTE

Dated    November 1, 2007
Office: 12 Main Street, Walden, NY 12586                    Loan #   5263166

This note amends and restates a note in the amount of $1,185,000.00 dated July 26, 2005. The total due on this note is $1,184,495.48 which is evidenced by this Amended and Restated Note dated November 1, 2007.

---

**FOR VALUE RECEIVED,**

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

One Million One Hundred Eighty Four Thousand Four Hundred Ninety Five and 48/100 ($1,184,495.48)

1.  **INTEREST.** Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

   Eight (8.0%) Percent per Annum

2.  **PAYMENTS.** Debtor agrees to make payment(s) as follows: Payments of interest only shall be due and payable on the first day of each and every month. The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2008.

[x ] **RENEWAL NOTE.** If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated July 26, 2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note. If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note. All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.  **CALCULATION OF INTEREST.** Interest shall be calculated on the basis of the following: 365 day year.

4.  **VARIABLE INTEREST.** If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

   If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.  **LATE CHARGE:** If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.  **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS:** Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.  **RIGHT TO COMPLETE NOTE:** Lender may at any time and from time to time, without notice to any Debtor: (a) date this Note as of the date when the  loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

1

Exhibit A.

8. **UNCONDITIONAL LIABILITY**: Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and shall not be affected by any extension of time, renewal, waiver or modification of this Note, or the release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT**: Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT**: Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS**: Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS**: (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

2

13. **WARRANTIES AND REPRESENTATIONS:** Loan documents and representations (Collateral) funds to be obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. **SECURITY:** THIS LOAN IS SECURED BY: Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY

Oxford Landing, LLC

By:_____     DATE: __11 / 16 / 07__
    Enrique Mazada, Member

3

# AMENDED AND RESTATED PROMISSORY NOTE

Dated    June 1, 2008
Office: 12 Main Street, Walden, NY 12586                    Loan #

This note amends and restates a note in the amount of $1,185,000.00 dated July 26, 2005 which note was amended and restated on November 1, 2007 and signed by Oxford Landing, LLC.  The total due on this note is $1,184,495.48 which is evidenced by this Amended and Restated Note dated June 1, 2008.

---

**FOR VALUE RECEIVED,**

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

One Million One Hundred Eighty Four Thousand Four Hundred Ninety Five and 48/100 ($1,184,495.48)

1.  **INTEREST**. Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

    Seven (7.0%) per annum

2.  **PAYMENTS**.  Debtor agrees to make payment(s) as follows:  Payments of interest only shall be due and payable on the first day of each and every month.  The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2009.

[x ] **RENEWAL NOTE**. If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated July 26, 2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note.  If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note.  All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.  **CALCULATION OF INTEREST**. Interest shall be calculated on the basis of the following:  365 day year.

4.  **VARIABLE INTEREST**. If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

    If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.  **LATE CHARGE**: If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.  **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS**:  Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.  **RIGHT TO COMPLETE NOTE**:  Lender may at any time and from time to time, without notice to any Debtor: (a) date this Note as of the date when the  loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

1

Exhibit "B"

8. **UNCONDITIONAL LIABILITY:** Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and shall not be affected by any extension of time, renewal, waiver or modification of this Note, or the release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT:** Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT:** Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS:** Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS:** (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

13. **WARRANTIES AND REPRESENTATIONS:** Debtor warrants and represents that the (Collateral) funds are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. **SECURITY:** THIS LOAN IS SECURED BY: Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY

Oxford Landing, LLC

By: _____     DATE: 5/29/08
   Enrique Mazada, Member

3

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR
CHANGES IN MY INTEREST RATE AND
MY MONTHLY PAYMENT.

July 26, 2005                                                                                  Walden, New York

17 Lots, Craigville Road
Orange County, Town of Blooming Grove, TMD: 52-1-79.11
(Property Address)

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,185,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is WALDEN FEDERAL SAVINGS AND LOAN ASSOCIATION. This Note evidences a loan (the "Loan") made, or so much thereof as may be made, by Lender to Borrower, in the principal amount hereof, and is secured by (a) a mortgage from Borrower to Lender dated on even date herewith in the amount of $1,185,000.00 (the "Mortgage") which creates a first lien on certain real property located in the Town of Blooming Grove, Orange County, State of New York (the "Real Property"); (b) the irrevocable, unconditional, joint and several guaranty of payment by Enrique Mazada, Charles Slane, Daniel Slane and The Slane Company, Ltd., (the "Guarantor(s)") of the Loan set forth in a guaranty of payment dated on even date herewith from the Guarantor(s) to Lender (the "Guaranty"); and (c) such other security as may now or hereafter be given to Lender by Borrower as collateral for the Loan (the Mortgage, the Guaranty, this Note and such other documents evidencing such other security which may hereafter be given as further security for, or in connection with, the Loan, being hereinafter collectively referred to as the "Loan Documents"). I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay initial interest at a yearly rate of 8.0%.

The interest rate I will pay may change daily, as provided in Paragraph 4.

## 3.  PAYMENTS
### (A) Time and Place of Payments
I will pay interest only by making payments every month.

I will make my initial monthly payments on the first day of each month beginning on September 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1, 2007, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 12-14 Main Street, Walden, New York 12586, or at a different place if required by the Note Holder.

1

Exhibit "C"

Each of my monthly payments will be in the amount of interest only. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change as and when the Prime Rate changes. Each date on which my interest rate could change is called a "Change date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Prime Rate as published in the Wall Street Journal.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding one and three quarter percentage points (1.75%) to the Current Index. The Note Holder will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

My interest rate will never be greater than 16.0% or less than 8.0%.

### (E) Effective Date of Change

My new interest rate will become effective on each Change Date.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which set maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the

permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment within five days of the date it is due, I will be in default. If I do not pay Lender any amount due on any other loan or transaction I may have with lender, I will be in default on this loan.

### (C) Default Rate of Interest

If an Event of Default occurs or if the Loan is not paid in full upon maturity (whether by acceleration or otherwise), then interest from the date of maturity or default shall be at the rate of the applicable interest rate on the loan plus four percentage points per annum or the maximum rate allowed by law, whichever is lower. The foregoing shall be in addition to Lender's other rights and remedies.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. I specifically agree that no right of the Note Holder provided for in this Note or accompanying Mortgage shall be deemed abandoned, surrendered, modified, waived, reduced or impaired unless such abandonment, surrender, modification, waiver, reduction or impairment is evidenced by a writing actually subscribed by the Note Holder.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

3

If more that one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Oxford Landing, LLC

By:    The Slane Company Ltd., Member

By:    _____
       Charles Slane, Vice President

State of Ohio        )
                     ) ss.:
County of Franklin   )

On July ___, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

_____

CAROLYN M. KINFORD
Notary Public, State of Ohio
My Commission Expires Oct. 21, 2009

(Sign Original Only)

Walden Federal Savings                                          July 26, 2005
  and Loan Association
12-14 Main Street
Walden, New York  12586

Attention:  Mortgage Department

    Re:    Mortgage Loan:    $1,185,000.00
          Borrower:         Oxford Landing, LLC
          Premises:        17 Lots, Craigville Road
                            Orange County, Town of Blooming Grove, TMD: 52-1-79.11

Dear Sirs:

        To induce you to consummate the captioned transaction and to lend the indicated amount to the Borrower in accordance with a Note and a Mortgage (the "Loan Documents"), each dated the date hereof between the Borrower and you, the undersigned, and if there are two or more signers, each of us, hereby jointly and severally represents, warrants and covenants to you and to any purchaser of the Note from you as follows:

        1.     The Loan Documents have been duly authorized and executed by the Borrower and are legal, valid and binding instruments, enforceable against the Borrower in accordance with their respective terms.

        2.     Each of us unconditionally guarantees the due performance and prompt payment, whether at maturity or by acceleration or otherwise, of all of the Borrower's obligations under the Loan Documents, together with interest on such obligations to the extent provided for in said documents and all legal and other costs or expenses paid or incurred by you in the enforcement thereof against the Borrower or any of us, and further unconditionally guarantees that the representations and warranties made by the Borrower in the Loan Documents are true as of the date hereof, and that each Requisition under the Loan Documents, by whomsoever shall constitute a personal affirmation on the part of each of us that at the time thereof, said representations and warranties are true and correct.

        3.     Our liability hereunder shall be unaffected by (i) any amendment or modification of the provisions of the Note, Mortgage or any other instrument made to or with you by the Borrower or any person who succeeds the Borrower as owner of the mortgaged premises, (ii) any extension of time for performance required thereby, (iii) any sale, assignment or foreclosure of the Note or Mortgage of any said of the mortgaged premises, (iv) any exculpatory provision in any of said instruments limiting your recourse to property encumbered by the Mortgage or to any other security, or limiting your rights to a deficiency judgment against the Borrower, (v) the release of the Borrower or any other person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of said instruments by operation of law or otherwise, (vi) the release in whole or in part of any security for the Note or (vii) your failure to record the Mortgage or file any UCC financing statements (or your improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note; and, in any such case, whether with or without notice to us and with or without consideration.

        4.     Each of us will cause the Borrower to maintain and preserve the enforceability of the Note and Mortgage as the same may be modified and will not permit the Borrower to take or to fail to take actions of any kind (other than payment of the Note and Mortgage), the taking of which or the failure to take which might be the basis for a claim that any of us has a defense to our obligations hereunder.

        5.     Each of us hereby agrees to indemnify you against loss, cost or expense caused by the assertion by the Borrower of any defense to its obligations under the Loan Documents or the assertion by any of us of any defense to our obligations hereunder. Each of us waives any right or claim or right to cause a marshalling of the

Exhibit "D"

Borrower's assets or to cause you ... proceed against any of the security for the Note or for the obligations guaranteed hereby before proceeding against us or to proceed against us in any particular order, each of us agrees that any payments required to be made by us hereunder shall become due on demand in accordance with the terms of the Loan Documents immediately upon the happening of any default under the Loan Documents and without presentment of the Note to the Borrower, demand for payment or protest thereof, or notice of non-payment or protest thereof; and each of us expressly waives and relinquished all rights and remedies accorded by applicable law to guarantors.

6.      The most recent financial statements heretofore delivered by us to you are true and correct in all respects and have been prepared in accordance with generally accepted accounting practice and fairly present our respective financial conditions as of the respective dates thereof; no material adverse change has occurred in our financial conditions reflected therein since the respective dates thereof.

7.      Each of us recognizes that you may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals and other date, or copies thereof, relevant to any of us, the Borrower or the loan, and to any advances thereunder, may be exhibited to and retained by any such participant or prospective participant.

8.      You may assign this Guaranty or any of your rights and powers hereunder, with all or any of the obligations hereby guaranteed.

9.      No delay on your part in exercising any right, power or privilege under the ... this guaranty or any other document made to or with you by the Borrower shall operate as a waiver of privilege, power or right.

10.     Any one or more of the undersigned, or any other party liable upon or in respect of any obligation hereby guaranteed, may be released without affecting the liability of any of the undersigned not so released.

11.     This Guaranty shall be construed and enforced in accordance with the laws of the State of New York.

12.     This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original. Said counterparts shall constitute but one and the same instrument and shall be binding upon each of the undersigned individually as fully and completely as if all had signed by one instrument so that the joint and several liability of each of the undersigned hereunder shall be unaffected by the failure of any of the other guarantors to execute any of said counterparts.

Very truly yours,

_____
Charles Slane

_____
Daniel Slane

_____
Enrique Mazada

The Slane Company Ltd.

By: _____
Charles Slane, Vice President

State of Ohio        )
                     ) ss.:
County of Franklin   )

On July __, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

CAROLYN M. KINFORD
Notary Public, State of Ohio
My Commission Expires Oct. 21, 2009

State of Ohio        )
                     ) ss.:
County of Franklin   )

On July __, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Daniel Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

CAROLYN M. KINFORD
Notary Public, State of Ohio
My Commission Expires Oct. 21, 2009

State of New York    )
                     ) ss.:
County of Orange     )

On July __, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Enrique Mazada, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

Notary Public, State of New York

DAVID ALAN BRODSKY
Notary Public, State of New York
No. 4795193
Qualified in Westchester County
Commission Expires Sept. 30, 18 2001

# AMENDED AND RESTATED PROMISSORY NOTE

Dated   June 1, 2008
Office: 12 Main Street, Walden, NY 12586                    Loan #

This note amends and restates a note in the amount of $1,000,000.00 dated November 9, 2005 which note was amended and restated on January 1, 2008 and signed by Oxford Landing, LLC.  The total due on this note is $1,000,000.00 which is evidenced by this Amended and Restated Note.

---

**FOR VALUE RECEIVED,**

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

   One Million Dollars and 00/100 ($1,000,000.00)

1.  **INTEREST**. Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

   Seven (7.0%) Percent per Annum

2.  **PAYMENTS**.  Debtor agrees to make payment(s) as follows:  Interest payments monthly on the first day of each and every month.  The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2009.

[x ] **RENEWAL NOTE**.  If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated November 9,  2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note.  If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note.  All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.  **CALCULATION OF INTEREST**. Interest shall be calculated on the basis of the following:  365 day year.

4.  **VARIABLE INTEREST**. If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

   If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.  **LATE CHARGE**:  If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.  **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS**:  Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.  **RIGHT TO COMPLETE NOTE**:  Lender may at any time and from time to time, without notice to any Debtor: (a) date .this Note as of the date when the   loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

1

Exhibit C

8. **UNCONDITIONAL**: Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and shall not be affected by any extension of time, renewal, waiver or modification or any release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT**: Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT**: Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS**: Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS**: (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

2

13. **WARRANTIES AND REPRESENTATIONS**: Debtor warrants and represents that the (Collateral) funds are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. SECURITY: THIS LOAN IS SECURED BY: Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY

Oxford Landing, LLC

By: _____       DATE: 5/29/08
    Enrique Mazada, Member

# AMENDED AND RESTATED PROMISSORY NOTE

Dated    November 1, 2007
Office: 12 Main Street, Walden, NY 12586                    Loan #

This note amends and restates a note in the amount of $1,000,000.00 dated November 9, 2005. The total due on this note is $1,000,000.00 which is evidenced by this Amended and Restated Note dated November 1, 2007.

**FOR VALUE RECEIVED,**

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

   One Million Dollars and 00/100 ($1,000,000.00)

1.   **INTEREST.** Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

   Eight (8.0%) Percent per Annum

2.   **PAYMENTS.** Debtor agrees to make payment(s) as follows: Interest payments monthly commencing December 1, 2007 and on the first day of each and every month thereafter. The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2008.

[x ] **RENEWAL NOTE.** If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated November 9, 2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note. If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note. All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.   **CALCULATION OF INTEREST.** Interest shall be calculated on the basis of the following: 365 day year.

4.   **VARIABLE INTEREST.** If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

   If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.   **LATE CHARGE:** If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.   **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS:** Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.   **RIGHT TO COMPLETE NOTE:** Lender may at any time and from time to time, without notice to any Debtor: (a) date this Note as of the date when the   loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

Exhibit F

1

8. **UNCONDITIONAL LIABILITY**: Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and any other extension, modification, renewal, substitution or addition the release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT**: Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT**: Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS**: Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS**: (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

13. **WARRANTIES AND REPRESENTATIONS**: Debtor warrants and represents that the (Collateral) funds are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. SECURITY:  THIS LOAN IS SECURED BY:  Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY


Oxford Landing, LLC


By:_____          DATE: _11/16/07_____
    Enrique Mazada, Member

Walden Federal Savings
and Loan Association
12-14 Main Street
Walden, New York  12586

Attention: Mortgage Department

Re:   Mortgage Loan: $1,000,000.00
      Borrower: Oxford Landing, LLC
      Premises:    17 Lot Subdivision, Craigville Road
                   Orange County, Town of Blooming Grove, New York 10914

Dear Sirs:

        To induce you to consummate the captioned transaction and to lend the indicated amount to the Borrower in accordance with a Building Loan Agreement, a Note (the "Note") and a Mortgage (the "Mortgage"), each dated the date hereof between the Borrower and you, the undersigned, and if there are two or more signers, each of us, hereby jointly and severally represents, warrants and covenants to you and to any purchaser of the Note from you as follows:

        1.      The Building Loan Agreement, Note and Mortgage have been duly authorized and executed by the Borrower and are legal, valid and binding instruments, enforceable against the Borrower in accordance with their respective terms.

        2.      Each of us unconditionally guarantees the due performance and prompt payment, whether at maturity or by acceleration or otherwise, of all of the Borrower's obligations under the Note and the Mortgage together with interest on such obligations to the extent provided for in said documents and all legal and other costs or expenses paid or incurred by you in the enforcement thereof against the Borrower or any of us, and further unconditionally guarantees that the representations and warranties made by the Borrower in the Building Loan Agreement are true as of the date hereof, and that each Requisition under the Building Loan Agreement, by whomsoever shall constitute a personal affirmation on the part of each of us that at the time thereof, said representations and warranties are true and correct.

        3.      Our liability hereunder shall be unaffected by (i) any amendment or modification of the provisions of the Building Loan Agreement, Note, Mortgage or any other instrument made to or with you by the Borrower or any person who succeeds the Borrower as owner of the mortgaged premises, (ii) any extension of time for performance required thereby, (iii) any sale, assignment or foreclosure of the Note or Mortgage or any sale of the mortgaged premises, (iv) any exculpatory provision in any of said instruments limiting your recourse to property encumbered by the Mortgage or to any other security, or limiting your rights to a deficiency judgment against the Borrower, (v) the release of the Borrower or any other person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of said instruments by operation of law or otherwise, (vi) the release in whole or in part of any security for the Note or (vii) your failure to record the Mortgage or file any UCC financing statements (or your improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note; and, in any such case, whether with or without notice to us and with or without consideration.

        4.      Each of us will cause the Borrower to maintain and preserve the enforceability of the Building Loan Agreement, Note and Mortgage as the same may be modified and will not permit the Borrower to take or to fail to take actions of any kind (other than payment of the Note and Mortgage), the taking of which or the failure to take which might be the basis for a claim that any of us has a defense to our obligations hereunder.

        5.      Each of us hereby agrees to indemnify you against loss, cost or expense caused by the assertion by the Borrower of any defense to its obligations under the Building Loan Agreement, Note or Mortgage or the assertion by any of us of any defense to our obligations hereunder. Each of us waives any right or claim or right



to cause a marshalling of the Borrower's assets or to cause you to proceed against any of the security for the Note or for the obligations guaranteed hereby before proceeding against us or in any particular order; each of us agrees that any payments required to be made by us hereunder shall become due on demand in accordance with the terms of the Note and Mortgage immediately upon the happening of any default under the Note or Mortgage and without presentment of the Note to the Borrower, demand for payment or protest thereof, or notice of non-payment or protest thereof; and each of us expressly waives and relinquished all rights and remedies accorded by applicable law to guarantors.

Case 7:09-cv-01042-SCR    Document 1    Filed 02/05/2009    Page 31 of 52

6.    The most recent financial statements heretofore delivered by us to you are true and correct in all respects and have been prepared in accordance with generally accepted accounting practice and fairly present our respective financial conditions as of the respective dates thereof; no material adverse change has occurred in our financial conditions reflected therein since the respective dates thereof.

7.    Each of us recognizes that you may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to any of us, the Borrower or the loan, and to any advances thereunder, may be exhibited to and retained by any such participant or prospective participant.

8.    You may assign this Guaranty or any of your rights and powers hereunder, with all or any of the obligations hereby guaranteed.

9.    No delay on your part in exercising any right, power or privilege under the Building Loan Agreement, the Mortgage, the Note, this guaranty or any other document made to or with you by the Borrower shall operate as a waiver of any such privilege, power or right.

10.    Any one or more of the undersigned, or any other party liable upon or in respect of any obligation hereby guaranteed, may be released without affecting the liability of any of the undersigned not so released.

11.    This Guaranty shall be construed and enforced in accordance with the laws of the State of New York.

12.    This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original.  Said counterparts shall constitute but one and the same instrument and shall be binding upon each of the undersigned individually as fully and completely as if all had signed as one instrument so that the joint and several liability of each of the undersigned hereunder shall be unaffected by the failure of any of the other guarantors to execute any of said counterparts.

Very truly yours,

_____
Charles Slane

_____
Daniel Slane

_____
Enrique Mazada

The Slane Company Ltd.

By: _____
Charles Slane, Vice President

State of Ohio      )
                   ) ss.:

County of Franklin   )

     On November 11th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared  Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _Columbus_ , County of _Franklin_ and State of Ohio, in which the acknowledgment was taken.

                               _Marcia A. McCoy_
                            Notary Public, State of Ohio
                            MARCIA A. McCOY
                            NOTARY PUBLIC, STATE OF OHIO
                            MY COMMISSION EXPIRES APRIL 15, 2007

State of Ohio      )
                   ) ss.:

County of Franklin   )

     On November 11th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Daniel Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _Columbus_ , County of _Franklin_ and State of Ohio, in which the acknowledgment was taken.

                                 _Marcia A. McCoy_
                            Notary Public, State of Ohio
                            MARCIA A. McCOY
                            NOTARY PUBLIC, STATE OF OHIO
                            MY COMMISSION EXPIRES APRIL 15, 2007

State of New York   )
                    ) ss.:

County of Orange   )

     On November ___, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared  Enrique Mazada, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

                                 
Notary Public, State of New York

                                DAVID B. GUBITS  #1596925
                                Notary Public, State of New York
                                Qualified in Ulster County
                                Commission Expires November 30, 2005

# Guaranty of Completion

AGREEMENT OF GUARANTY made this November 9, 2005, by the undersigned hereof (herein called the "Guarantor"), to WALDEN FEDERAL SAVINGS AND LOAN ASSOCIATION, a federal savings and loan association, having offices at 12-14 Main Street, Walden, New York 12586 (together with its successors and assigns herein called "Lender");

## WITNESSETH

**WHEREAS,** Oxford Landing, LLC , the ("Borrower") has requested Lender to lend to Borrower the sum of $1,000,000.00 (the "Loan") in order to assist the Borrower in the construction, completion and making of certain improvements (the "Improvements") pursuant to certain plans and specifications approved, or to be approved, by Lender (the "Plans and Specifications") on land located in the Town of Blooming Grove, County of Orange and State of New York (the "Premises") which land is more particularly described in a certain building loan mortgage, dated as of the date hereof in the total amount of $1,000,000.00 (the "Mortgage"), to be evidenced by a certain building loan mortgage note made by the Borrower, dated the date hereof (the "Note"), which is secured by the Mortgage; and

**WHEREAS,** simultaneously with the delivery of this Guaranty, Borrower and Lender will execute and deliver a certain building loan agreement (the "Building Loan Agreement") - the Building Loan Agreement is hereinafter sometimes referred to as the "Loan Agreement") to establish and declare the terms and conditions upon which advances shall be made upon the Loan; and

**WHEREAS,** as part of the consideration for the making of the Loan and the execution and delivery of the Loan Agreement, Borrower has agreed to procure and deliver this Guaranty; and

**WHEREAS,** Lender has declined to enter into the Loan Agreement and to agree to make the Loan unless the Guaranty is executed by the Guarantor and duly delivered to Lender;

**NOW, THEREFORE,** in consideration of the foregoing, and of Lender making the loan, and other valuable consideration, the Guarantor, hereby jointly and severally, absolutely, unconditionally and irrevocably guaranty unto Lender:

I.      Completion of the construction of the Improvements, in a prompt and expeditious manner, from the time the undersigned are called upon to perform hereunder, (a) free and clear of all encumbrances, defects in construction or materials and free and clear of all liens and claims of liens by mechanics, materialmen, or others, and (b) in accordance with all applicable laws, ordinances, codes, governmental regulations and restrictions (including, but not limited to those governing Hazardous Substances) and the Plans and Specifications for the building approved by Lender.

II.      If the Borrower shall default in the performance of its obligations under the Building Loan Agreement and, if after written notice and demand made by the Lender as aforesaid, the undersigned shall fail or refuse to perform, or continue performance of, all of the obligations under the Guaranty on the Guarantor's part to be kept and performed with respect to the completion of the Improvements, then in addition to any other rights and remedies which the Lender may have hereunder, the Lender, at the Lender's option, shall have the right to take action (including the payment of costs and expenses) to complete the Improvements either before or after commencement of foreclosure proceedings or before or after the exercise of any other remedy of the Lender against the Borrower or the undersigned. The amounts of any and all expenditures so made by the Lender for completion of the Improvements in accordance with the Plans and Specifications, to the extent such

amounts exceed the undisbursed portion of the Loan allocated thereto, the Lender, shall be due and payable to the Lender by the undersigned within ten (10) days after demand for such notice made demand by the Lender.

## GUARANTOR AGREES THAT:

1.    Without affecting, diminishing, or otherwise impairing the liability of Guarantor, hereunder and without notice to or consent of Guarantor, Lender may from time to time grant renewals, extensions, indulgences, releases, and discharges to Borrower, and may take security for payment of the Loan, and may release any or all security or refrain from perfecting any interest in any security granted by Borrower.

2.    Lender may amend or modify the Note or any instrument executed to secure payment thereof or otherwise in connection therewith, and otherwise may deal with the Borrower without notice to or consent of Guarantor, and without affecting, diminishing, or otherwise impairing the liability of Guarantor hereunder.

3.    Guarantor shall not be subrogated to Lender in respect or any action taken or permitted by Lender, until Lender has received payment in full of the Loan, together with interest thereon and together with all costs, reasonable attorneys' fees and other expenses incurred by Lender in enforcing the payment of the Loan or in enforcing performance and observation of any other obligation hereby guaranteed.

4.    Lender may from time to time consent to any action or non-action of Borrower, which, in the absence of such consent, violates or may violate any provision of the Loan documents, and that such consent may be granted by Lender, without in any manner affecting, diminishing, or impairing the liability of the Guarantor hereunder.

5.    This Guaranty shall continue to be effective, or be reinstated (as the case may be) if at any time payment by Borrower of all or any part of any sum payable pursuant to the Loan is rescinded or otherwise must be returned by Lender upon the insolvency, bankruptcy, or reorganization of the Borrower all as though such payment to Lender had not been made.

6.    No change in the composition of Borrower or any shareholder of Borrower shall in any way affect, diminish, or otherwise impair the liability of Guarantor, and Lender shall not be obligated to inquire into the powers of the Borrower notwithstanding such borrowing, renewals or credits shall be in excess of the powers of the Borrower. Credit may be granted or continued from time to time by the Lender to the Borrower without notice to or authorization from the undersigned regardless of the Borrower's financial condition at the time of such grant of continuation.

7.    Lender shall not be obligated to pursue or exhaust its recourse against the Borrower, or against each of the undersigned or any other person or guarantor, or any security it may have for repayment of the Loan before being entitled to performance by Guarantor of each and every one of the obligations hereunder.

8.    Notwithstanding the provisions of the laws of any state relating to the rate of interest payable by Borrower, this Guaranty shall remain in full force and effect whatever the rate of interest received or demanded by Lender and no invalidity, irregularity, or liability of the Borrower or of any security therefore and no release or discharge of the Borrower in any receivership. bankruptcy, winding-up, or other creditor proceedings shall affect, diminish, or otherwise impair or otherwise be a defense to this Guaranty.

Case 7:09-md-02299-SCR Document 1 Filed 02/06/2009 Page 35 of 52

9. This Guaranty ; been delivered free of any condition d no representations have been made as Guaranty affecting or limiting the liability of Guarantor except as provided herein. This Guaranty is in addition to and not in substitution for any other guaranties held or which may hereafter be held by Lender.

10. No action or proceeding brought or instituted under this Guaranty and no recovery pursuant thereto shall be a bar or defense to any further action or proceeding which may be brought hereunder or in the performance and observance of the terms, covenants, conditions and provisions in the Loan Documents.

11. No waivers, modification, extension, forbearance, or delay on the part of the Lender with respect to the Loan and no act or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of a surety, shall operate to release the obligations of the Guarantor under this Guaranty, and no delay on the part of the Lender in exercising any of its options, powers, or rights hereunder, or a partial or single exercise thereof, shall constitute a waiver of any other rights hereunder.

12. Guarantor hereby waives presentment, protest, notice, demand or action or delinquency in respect to the Loan or any obligation hereby guaranteed. Guarantor waives acceptance of this Guaranty.

13. This Guaranty shall survive foreclosure of any mortgage, deed of trust, or other security agreement securing payment of the Loan, it being agreed that this Guaranty shall terminate only upon completion of the Improvements in accordance with the terms of the Loan Documents.

14. The liability of the Guarantor shall not be affected by any taking of possession of the Improvements by Lender, or by Lender's causing work necessary for the completion of the Improvements to be done, or pursuing any other remedies provided for in the Loan Documents.

15. The Guarantor's liability hereunder is independent of any other guaranties or other obligations at any time in effect with respect to the Loan, and the Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guaranties or other obligations.

16. The Guarantor shall deliver to Lender annually, within one hundred twenty (120) days of the close of each fiscal year, income statements and balance sheets for the period, certified as true and correct by the Guarantor.

17. The Guarantor shall pay all costs, fees and expenses (including reasonable attorney's fees) incurred by Lender in enforcing this Guaranty.

18. Neither this Guaranty nor any provisions hereof may be amended, modified, waived, discharges, or terminated orally, but only by an instrument in writing duly signed by or on behalf of the party against whom enforcement of such amendment, modification, waiver, discharge or termination is sought. This Guaranty shall inure to the benefit of Lender, and its successors and assigns, and shall be binding upon the Guarantor and their successors and assigns.

19. This Guaranty contains the sole and entire understanding and agreement with respect to its entire subject matter, and all prior negotiations, discussions, commitments, representations, agreements and understandings heretofore had between the Guarantor and Lender with respect thereto are merged herein. This Guaranty cannot be changed or terminated orally.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR
CHANGES IN MY INTEREST RATE AND
MY MONTHLY PAYMENT.

November 9, 2005                                              Walden, New York

17 Lot Subdivision, Craigville Road
Orange County, Town of Blooming Grove, TMD: 52-5-1 through 18
(Property Address)

1.     **BORROWER'S PROMISE TO PAY**
       In return for a loan that I have received, I promise to pay U.S. $1,000,000.00 (this amount is called
"principal"), plus interest, to the order of the Lender.  The Lender is WALDEN FEDERAL SAVINGS
AND LOAN ASSOCIATION. This Note evidences a loan (the "Loan") made, or so much thereof as may
be made, by Lender to Borrower, in the principal amount hereof, and is secured by (a) a mortgage from
Borrower to Lender dated on even date herewith in the amount of $1,000,000.00 (the "Mortgage") which
creates a first lien on certain real property located in the Town of Blooming Grove, Orange County, State
of New York (the "Real Property"); (b) the irrevocable, unconditional, joint and several guaranty of
payment by Enrique Mazada, Charles Slane, Daniel Slane and The Slane Company, Ltd., (the "Guarantor(s)")
of the Loan set forth in a guaranty of payment dated on even date herewith from the Guarantor(s) to Lender
(the "Guaranty");; and (c) such other security as may now or hereafter be given to Lender by Borrower as
collateral for the Loan (the Mortgage, the Guaranty, this Note and such other documents evidencing such
other security which may hereafter be given as further security for, or in connection with, the Loan, being
hereinafter collectively referred to as the "Loan Documents"). I understand that the Lender may transfer
this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments
under this Note is called the "Note Holder."

2. **INTEREST**
       Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will
pay initial interest at a yearly rate of 7.75%.  The interest rate I will pay may change daily in accordance
with Section 4 of this Note herein.

3.     **PAYMENTS**
       **(A) Time and Place of Payments**
       I will pay interest only by making payments every month.

       I will make my initial monthly payments on the first day of each month beginning on December 1,
2005. I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note.  My monthly payments will be applied to
interest before principal.  If, on November 1, 2007, I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "maturity date."

       I will make my monthly payments at 12-14 Main Street, Walden, New York 12586, or at a different
place if required by the Note Holder.
       **(B) Amount of My Initial Monthly Payments**
       Each of my monthly payments will be in the amount of interest only.  This amount may change.

1
Exhibit "H"

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Case 7:09-cv-01042-SCR    Document 1    Filed 02/05/2009    Page 37 of 52

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates
The interest rate I will pay may change as and when the Prime Rate changes. Each date on which my interest rate could change is called a "Change date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Prime Rate as published in the Wall Street Journal. The prime rate in effect is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding one percentage point (1.0%) to the Current Index. The Note Holder will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes - Not applicable

### (E) Effective Date of Change
My new interest rate will become effective on each Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which set maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment within five days of the date it is due, I will be in default. If I do not pay Lender any amount due on any other loan or transaction I may have with lender, I will be in default on this loan.

### (C)    Default Rate of Interest

If an Event of Default occurs or if the Loan is not paid in full upon maturity (whether by acceleration or otherwise), then interest from the date of maturity or default shall be at the rate of the applicable interest rate on the loan plus four percentage points per annum or the maximum rate allowed by law, whichever is lower. The foregoing shall be in addition to Lender's other rights and remedies.

### (D)    No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. I specifically agree that no right of the Note Holder provided for in this Note or accompanying Mortgage shall be deemed abandoned, surrendered, modified, waived, reduced or impaired unless such abandonment, surrender, modification, waiver, reduction or impairment is evidenced by a writing actually subscribed by the Note Holder.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more that one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

3

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Oxford Landing, LLC

By:    The Slane Company Ltd., Member

By:    _____

Charles Slane, Vice President

State of Ohio    )
    ) ss.:
County of Franklin    )

On November 7th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of _Columbus_, County of _Franklin_ and State of Ohio, in which the acknowledgment was taken.

_____

Notary Public, State of Ohio

MARCIA A. McCOY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES APRIL 15, 2007

(Sign Original)

W:\723\3180\LS7815.WPD

4

ADJUSTABLE RATE NOTE

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR
CHANGES IN MY INTEREST RATE AND
MY MONTHLY PAYMENT.

November 9, 2005                                                           Walden, New York

17 Lots, Craigville Road
Orange County, Town of Blooming Grove, TMD: 52-1-79.11
(Property Address)

1.    **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $815,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is WALDEN FEDERAL SAVINGS AND LOAN ASSOCIATION. This Note evidences a loan (the "Loan") made, or so much thereof as may be made, by Lender to Borrower, in the principal amount hereof, and is secured by (a) a mortgage from Borrower to Lender dated on even date herewith in the amount of $815,000.00 (the "Mortgage") which creates a first lien on certain real property located in the Town of Blooming Grove, Orange County, State of New York (the "Real Property"); (b) the irrevocable, unconditional, joint and several guaranty of payment by Enrique Mazada, Charles Slane, Daniel Slane and The Slane Company, Ltd., (the "Guarantor(s)") of the Loan set forth in a guaranty of payment dated on even date herewith from the Guarantor(s) to Lender (the "Guaranty"); and (c) such other security as may now or hereafter be given to Lender by Borrower as collateral for the Loan (the Mortgage, the Guaranty, this Note and such other documents evidencing such other security which may hereafter be given as further security for, or in connection with, the Loan, being hereinafter collectively referred to as the "Loan Documents"). I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay initial interest at a yearly rate of 7.75%. The interest rate I will pay may change daily in accordance with Section 4 of this Note herein.

3.    **PAYMENTS**

(A)  **Time and Place of Payments**

I will pay interest only by making payments every month.

I will make my initial monthly payments on the first day of each month beginning on December 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2007, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 12-14 Main Street, Walden, New York 12586, or at a different place if required by the Note Holder.

(B)  **Amount of My Initial Monthly Payments**

Each of my monthly payments will be in the amount of interest only. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      **(A) Change Dates**
      The interest rate I will pay may change as and when the Prime Rate changes. Each date on which my interest rate could change is called a "Change date."

      **(B) The Index**
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Prime Rate as published in the Wall Street Journal. The prime rate in effect is called the "Current Index".

      If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

      **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding one percentage point (1.0%) to the Current Index. The Note Holder will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

      **(D) Limits on Interest Rate Changes - Not applicable**

      **(E) Effective Date of Change**
      My new interest rate will become effective on each Change Date.

5.    **LINE OF CREDIT**

      This is a line of credit Loan to the Borrower from the date hereof until the maturity date of November 1, 2007 under the terms and conditions of the commitment letter dated October 7, 2005, this Note and accompanying Mortgage in amounts that may be requested by the Borrower from time to time, so long as at any time the unpaid outstanding aggregate principal amount of all the loans and advances does not exceed the full principal amount of this note. Upon satisfaction of the conditions set forth in the Note and Mortgage, Borrower shall be entitled to borrow up to the full principal amount of the Note and to repay and re-borrow from time to time during the term of this Note. The Lender and Borrower may agree in writing to change the terms of this loan, including extension of the draw period.

6.    **BORROWER'S RIGHT TO PREPAY**

      I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

      I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my

## 7.   LOAN CHARGES

If a law, which applies to this loan and which set maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 8.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)   Default

If I do not pay the full amount of each monthly payment within five days of the date it is due, I will be in default. If I do not pay Lender any amount due on any other loan or transaction I may have with lender, I will be in default on this loan.

### (C)   Default Rate of Interest

If an Event of Default occurs or if the Loan is not paid in full upon maturity (whether by acceleration or otherwise), then interest from the date of maturity or default shall be at the rate of the applicable interest rate on the loan plus four percentage points per annum or the maximum rate allowed by law, whichever is lower. The foregoing shall be in addition to Lender's other rights and remedies.

### (D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. I specifically agree that no right of the Note Holder provided for in this Note or accompanying Mortgage shall be deemed abandoned, surrendered, modified, waived, reduced or impaired unless such abandonment, surrender, modification, waiver, reduction or impairment is evidenced by a writing actually subscribed by the Note Holder.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 9.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

· Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more that one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Oxford Landing, LLC

By:   The Slane Company Ltd., Member

By:   _____
        Charles Slane, Vice President

State of Ohio            )
                              ) ss.:
County of Franklin    )

On November 7th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public, State of Ohio
MARCIA A. McCOY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES APRIL 15, 2007

(Sign Original Only)

W:\723\3180\LS7810.WPD

4

Dated    November 1, 2007
Office: 12 Main Street, Walden, NY 12586                    Loan #

This note amends and restates a note in the amount of $815,000.00 dated November 9, 2005. The total due on this note is $815,000.00 which is evidenced by this Amended and Restated Note dated November 1, 2007.

---

**FOR VALUE RECEIVED,**

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

Eight Hundred Fifteen Thousand and 00/100 ($815,000.00)

1.  **INTEREST.** Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

Eight (8.0%) Percent per Annum

2.  **PAYMENTS.** Debtor agrees to make payment(s) as follows: Payments of interest only shall be due and payable each and every month commencing December 1, 2007. The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2008.

[x ] **RENEWAL NOTE.** If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated November 9, 2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note. If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note. All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.  **CALCULATION OF INTEREST.** Interest shall be calculated on the basis of the following: 365 day year.

4.  **VARIABLE INTEREST.** If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.  **LATE CHARGE:** If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.  **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS:** Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.  **RIGHT TO COMPLETE NOTE:** Lender may at any time and from time to time, without notice to any Debtor: (a) date this Note as of the date when the   loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

1

Exhibit "J"

8. **UNCONDITIONAL LIABILITY:** Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and shall not be affected by any extension of time, renewal, waiver or modification of this Note, or the release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT:** Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT:** Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS:** Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS:** (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

13. **WARRANTIES AND REPRESENTATIONS:** Debtor warrants and represents that the (Collateral) funds are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. SECURITY: THIS LOAN IS SECURED BY: Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY

Oxford Landing, LLC

By: _____     DATE: 11/16/07
   Enrique Mazada, Member

# AMENDED AND RESTATED PROMISSORY NOTE

Dated   June 1, 2008
Office: 12 Main Street, Walden, NY 12586          Loan #

This note amends and restates a note in the amount of $815,000.00 dated November 9, 2005 which note was amended and restated on November 1, 2007 and signed by Oxford Landing, LLC. The total due on this note is $815,000.00 which is evidenced by this Amended and Restated Note.

_____

FOR VALUE RECEIVED,

**Oxford Landing, LLC** of 463 Scotchtown Road Middletown, New York 10940
(hereafter referred to as "Debtor"), jointly and severally if more than one, promise(s) to pay to the order of

**Walden Federal Savings and Loan Association** hereafter referred to as "Lender") at any of Lender's offices, in lawful money of the United States, the Principal sum of

Eight Hundred Fifteen Thousand and 00/100 ($815,000.00)

1.   INTEREST. Debtor agrees to pay interest on the unpaid principal balance at the following rate(s):

**Seven (7.0%) Percent per Annum**

2.   **PAYMENTS.** Debtor agrees to make payment(s) as follows: Payments of interest only shall be due and payable each and every month. The entire principal balance plus all accrued interest and other charges shall be payable in full upon maturity date of June 1, 2009.

[x ] **RENEWAL NOTE.** If checked, Debtor agrees that this Note is a renewal of the Promissory Note dated November 9, 2005, and that, whether or not additional funds are advanced herewith, this Note is not intended to create a new debt for the unpaid portion of the prior Note. If Lender was given a purchase money or other security interest in connection with the prior Note, that security interest shall be retained by Lender in connection with this Note. All provisions of the said original Promissory Note not modified by this renewal Note shall be deemed incorporated in this Renewal Note and shall continue in full force and effect.

3.   **CALCULATION OF INTEREST.** Interest shall be calculated on the basis of the following: 365 day year.

4.   **VARIABLE INTEREST.** If this Note provides for interest which may vary based on changes in a designated, published, or otherwise determined rate (hereafter referred to as the "reference rate"), the interest rate on this Note shall change effective:

If more than one change in the reference rate occurs before such effective date, the most recent change shall control.

5.   **LATE CHARGE:** If a payment is more than 10 days late, Debtor agrees to pay a late charge of 6.00% of the payment amount.

6.   **LOAN PURPOSE; DISBURSEMENT OF PROCEEDS:** Each Debtor hereby represents and warrants to Lender that the loan evidenced by this Note will be used primarily for business or commercial purposes and agrees that any disbursement of said loan, or any portion thereof, to any one or more Debtors, shall conclusively be deemed to constitute disbursement of such loan to and for the benefit of all Debtors.

7.   **RIGHT TO COMPLETE NOTE:** Lender may at any time and from time to time, without notice to any Debtor: (a) date this Note as of the date when the  loan evidenced hereby was made; (b) complete any blank spaces according to the terms upon which Lender has granted such loan; and (c) cause the signature of one or more persons to be added as additional debtors without in any way affecting or limiting the liability of the existing Debtors to Lender.

1

8. **UNCONDITIONAL LIABILITY**: Each Debtor's liability shall be unconditional and without regard to the liability of any other Debtor, and shall not be affected by any extension of time, renewal, waiver or modification of this Note, or the release, substitution or addition of collateral for this Note. Each Debtor consents to any and all extensions of time, renewals, waivers or modifications, as well as to the release, substitution or addition of guarantors or collateral security, without notice to Debtor and without affecting Debtor's liability hereunder. This Note is entitled to the benefits of any loan agreement(s), surety and guaranty agreement(s), surety and guaranty agreement(s), security agreement(s), mortgage(s), assignment(s), and/or other such loan documents (referred to collectively as the "Loan Documents") applicable to the debt evidenced by this Note, whether executed previously to, concurrently with, or subsequent to, this Note, and which may be amended, modified, renewed or substituted, without affecting in any way the enforceability of the Note.

9. **EVENTS OF DEFAULT**: Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount payable under this Note or under any other obligation of any Debtor to Lender; (b) the failure of any Debtor to observe or perform any present or future agreement of any nature whatsoever with Lender, including but not limited to, those contained in the Loan Documents; (c) if any Debtor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Debtor under any provision of any state or federal law or statute alleging that such Debtor is insolvent or unable to pay debts as they mature or under any provision of the Federal Bankruptcy Code; (d) the entry of any judgment against any Debtor or any of Debtor's property which remains unsatisfied for fifteen (15) days; (e) the issuing of any attachment, levy or garnishment against any property of any Debtor; (f) the occurrence of any substantial change in the financial condition of any Debtor which, in the sole, reasonable good faith judgment of Lender is materially adverse; (g) the sale of all or substantially all of the assets, or change in ownership or the dissolution, liquidation, merger, consolidation or reorganization of any Debtor which is a corporation a natural person; (i) if any information or signature furnished to Lender at any time in connection with the loan evidenced by this Note, or in connection with any guaranty or surety agreement applicable hereto is false or incorrect; or (j) the failure of any Debtor to timely furnish to Lender such financial and other information or partnership; (h) the death, incarceration or adjudication of legal incompetence of any Debtor who is as Lender may reasonably request.

10. **LENDER'S RIGHTS UPON DEFAULT**: Upon the occurrence of any Event of Default, Lender may do any or all of the following concurrently or separately: (a) accelerate the maturity of this Note and demand immediate payment of all outstanding Principal and accrued interest; (b) exercise Lender's right of set-off against the account(s) of each Debtor; (c) exercise all of the rights, privileges and remedies of a secured party under the New York Uniform Commercial Code and all of Lender's rights and remedies under any of the Loan Documents; (d) Upon five (5) days' written notice to Debtor, begin accruing interest, in addition to the interest provided for above, if any, at a rate not to exceed four percent (4%) per annum on the unpaid Principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law. Such default rate shall continue to accrue until said principal sum is fully paid, and, if such interest is greater than the statutory rate, then until any judgment is fully satisfied. Debtor agrees to pay such accrued interest upon demand.

11. **PREPAYMENTS**: Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time without penalty. However, if the Principal of this Note is repayable in installments, any such prepayments shall be applied first to accrued interest to the date of prepayment and then on account of the last remaining unpaid Principal payment to become due, and the number of installments due hereunder shall be correspondingly reduced. No such prepayments shall reduce the amounts of the scheduled installments nor relieve Debtor from paying a scheduled installment on each installment payment date until all Principal due together with accrued interest thereon has been paid in full.

12. **MISCELLANEOUS**: (a) Debtor hereby waives protest, notice of protest, presentment, dishonor, notice of dishonor and demand. (b) Debtor agrees to reimburse Lender for all costs, including court costs and reasonable attorney's fees incurred by Lender in connection with the collection and enforcement hereof. (c) The rights and privileges of Lender under this Note shall inure to the benefit of its successors and assigns. All obligations of Debtor in connection with this Note shall bind Debtor's representatives, heirs, successors and assigns, (d) If any provision of this Note shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Note shall be construed as if such invalid or unenforceable provision had never been contained herein. (e) The waiver of any Event of Default or the failure of Lender to exercise any right or remedy to which it may be entitled shall not be deemed a waiver of any subsequent Event of Default or Lender's right to exercise that or any other right or remedy to which Lender is entitled. (f) This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the State of New York. The parties agree to the jurisdiction of the federal and state courts located in New York in connection with any matter arising hereunder, including the collection and enforcement hereof.

2

13. **WARRANTIES AND REPRESENTATIONS:** Debtor warrants and represents that the (Collateral) funds are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and Debtor will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. Debtor agrees to promptly inform Lender of any proposed proceedings or actual proceeding which would subject the (Collateral) funds to forfeiture to any governmental body.

14. SECURITY:  THIS LOAN IS SECURED BY:  Mortgage on 17 lots located at CraigvilleRoad, Town of Blooming Grove, NY

Oxford Landing, LLC

By: _____      DATE: _5/29/08_
    Enrique Mazada, Member

3

Walden Federal Savings
and Loan Association
12-14 Main Street
Walden, New York  12586

Attention:  Mortgage Department

Re:    Mortgage Loan: $815,000.00
       Borrower: Oxford Landing, LLC
       Premises:    17 Lot Subdivision, Craigville Road
                    Orange County, Town of Blooming Grove, New York 10914

Dear Sirs:

To induce you to consummate the captioned transaction and to lend the indicated amount to the Borrower in accordance with a Note (the "Note") and a Mortgage (the "Mortgage"), each dated the date hereof between the Borrower and you, the undersigned, and if there are two or more signers, each of us, hereby jointly and severally represents, warrants and covenants to you and to any purchaser of the Note from you as follows:

1.      The Note and Mortgage have been duly authorized and executed by the Borrower and are legal, valid and binding instruments, enforceable against the Borrower in accordance with their respective terms.

2.      Each of us unconditionally guarantees the due performance and prompt payment, whether at maturity or by acceleration or otherwise, of all of the Borrower's obligations under the Note and the Mortgage together with interest on such obligations to the extent provided for in said documents and all legal and other costs or expenses paid or incurred by you in the enforcement thereof against the Borrower or any of us.

3.      Our liability hereunder shall be unaffected by (i) any amendment or modification of the provisions of the  Note, Mortgage or any other instrument made to or with you by the Borrower or any person who succeeds the Borrower as owner of the mortgaged premises, (ii) any extension of time for performance required thereby, (iii) any sale, assignment or foreclosure of the Note or Mortgage or any sale of the mortgaged premises, (iv) any exculpatory provision in any of said instruments limiting your recourse to property encumbered by the Mortgage or to any other security, or limiting your rights to a deficiency judgment against the Borrower, (v) the release of the Borrower or any other person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of said instruments by operation of law or otherwise, (vi) the release in whole or in part of any security for the Note or (vii) your failure to record the Mortgage or file any UCC financing statements (or your improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note; and, in any such case, whether with or without notice to us and with or without consideration.

4.      Each of us will cause the Borrower to maintain and preserve the enforceability of the Note and Mortgage as the same may be modified and will not permit the Borrower to take or to fail to take actions of any kind (other than payment of the Note and Mortgage), the taking of which or the failure to take which might be the basis for a claim that any of us has a defense to our obligations hereunder.

5.      Each of us hereby agrees to indemnify you against loss, cost or expense caused by the assertion by the Borrower of any defense to its obligations under the Note or Mortgage or the assertion by any of us of any defense to our obligations hereunder.  Each of us waives any right or claim or right to cause a marshalling of the Borrower's assets or to cause you to proceed against any of the security for the Note or for the obligations guaranteed hereby before proceeding against us or to proceed against us in any particular order; each of us agrees that any payments required to be made by us hereunder shall become due on demand in accordance with the terms of the Note and Mortgage immediately upon the happening of any default under the Note or Mortgage and

without presentment of the Note(    )he Borrower, demand for payment or prc(    ) thereof, or notice of non-payment Case 7:10-cv-04121-SCR expressly waives and relied 03/03/2008 and Page 51 of 52ded by applicable law to guarantors.

6.      The most recent financial statements heretofore delivered by us to you are true and correct in all respects and have been prepared in accordance with generally accepted accounting practice and fairly present our respective financial conditions as of the respective dates thereof; no material adverse change has occurred in our financial conditions reflected therein since the respective dates thereof.

7.      Each of us recognizes that you may sell and transfer interests in the loan to one or more participants and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to any of us, the Borrower or the loan, and to any advances thereunder, may be exhibited to and retained by any such participant or prospective participant.

8.      You may assign this Guaranty or any of your rights and powers hereunder, with all or any of the obligations hereby guaranteed.

9.      No delay on your part in exercising any right, power or privilege under the Mortgage, the Note, this guaranty or any other document made to or with you by the Borrower shall operate as a waiver of any such privilege, power or right.

10.      Any one or more of the undersigned, or any other party liable upon or in respect of any obligation hereby guaranteed, may be released without affecting the liability of any of the undersigned not so released.

11.      This Guaranty shall be construed and enforced in accordance with the laws of the State of New York.

12.      This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original. Said counterparts shall constitute but one and the same instrument and shall be binding upon each of the undersigned individually as fully and completely as if all had signed as one instrument so that the joint and several liability of each of the undersigned hereunder shall be unaffected by the failure of any of the other guarantors to execute any of said counterparts.

Very truly yours,

_____
Charles Slane

_____
Daniel Slane

_____
Enrique Mazada

The Slane Company Ltd.

By: _____
Charles Slane, Vice President

State of Ohio        )

County of Franklin     )

      On November 7th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared  Charles Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of ___Columbus___, County of ___Franklin___ and State of Ohio, in which the acknowledgment was taken.

MARCIA A. McCOY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES APRIL 15, 2007

_____
Notary Public, State of Ohio

State of Ohio        )
               ) ss.:
County of Franklin     )

      On November 7th, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared Daniel Slane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of ___Franklin___, County of ___Columbus___ and State of Ohio, in which the acknowledgment was taken.

MARCIA A. McCOY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES APRIL 15, 2007

_____
Notary Public, State of Ohio

State of New York    )
              ) ss.:
County of Orange     )

      On November 10, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared  Enrique Mazada, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signature on the instrument, the individuals or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public, State of New York

DAVID B. GUBITS  #1596925
Notary Public, State of New York
Qualified in Ulster County
Commission Expires November 30, 2005